FILED IN OPEN COURT

SEP - 4 2009

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| XYROUS COMMUNICATIONS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:09-cv-396 |
| ) | |
| BULGARIAN TELECOMMUNICATIONS ) | |
| COMPANY AD, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

In this action, Plaintiff Xyrous Communications, LLC ("Xyrous") seeks to recover on a default judgment it obtained against Defendant Bulgarian Telecommunications Company, AD ("BTC") by garnishing BTC funds allegedly held in the accounts of Garnishee Citibank, N.A ("Citibank"). This case is uniquely postured because BTC is domiciled in Bulgaria. BTC claims that this Court lacks personal jurisdiction over it and that Xyrous failed to properly serve process, and moves to dismiss the claims of this case on these grounds. For the reasons stated below, this court will deny BTC's motion to dismiss for lack of personal jurisdiction, and deny BTC's motion to dismiss for improper service of process without prejudice, but require Xyrous to re-serve BTC through the Hague Convention, as mandated by Fed. R. Civ. P. 4.

### I. BACKGROUND

Xyrous and BTC entered into a contract on August 8, 2005 involving the provision of telecommunication services. After a dispute arose, Xyrous initiated a lawsuit against BTC in the

1

Circuit Court of Fairfax County, Virginia.[1] Because BTC failed to timely appear in this action, Xyrous obtained a default judgment against BTC in the amount of $807,585.76.[2] Over two and a half months after this judgment, and well after the expiration of the 21-day "in the breast of the court" period, BTC moved the court to set aside the judgment on the grounds that the Xyrous obtained it through fraud on the court. Even though BTC filed this motion after the 21-day post-judgment period expired, the motion was timely filed under Va. Code § 8.01-428 because it was grounded in a "fraud on the court" theory and was raised within two years of the issuance of default judgment. *See* Va. Code § 8.01-428 ("motion on the ground of fraud on the court shall be made within two years from the date of the judgment or decree.").

In the memorandum in support of its motion, BTC argued that the following Xyrous conduct amounted to fraud on the court: (1) Xyrous filed a claim in Virginia when the contract between the parties had a forum selection clause stating that disputes should be resolved in England; (2) despite this forum selection clause, Xyrous represented that the Fairfax County Circuit Court had subject matter jurisdiction; and (3) Xyrous repeatedly represented that it properly served BTC's counsel of record when no such counsel existed and no such service was effected. In addition to the fraud arguments, BTC asserted that the lack of subject matter jurisdiction required the court to void the default judgment. BTC also alleged that the default judgment should be voided because BTC became aware of the action after the Court entered the default and money judgment. On April 25, 2008, the Fairfax County Circuit Court issued an order denying BTC's motion to set aside the default judgment, finding that Xyrous committed no acts of extrinsic fraud on the court.

---

[1] The complaint was filed on October 12, 2007. The case number assigned to this matter was CL-2007-0012388.

[2] The final order of default was issued by the Fairfax Circuit Court on January 11, 2008. The judgment number associated with this order was 435392.

Importantly, BTC's motion was captioned "Defendant's Motion for Relief from Judgment by Default," and it represented BTC's first appearance before the court in the default judgment action. BTC never moved to quash process and never made a special appearance asking the court to dismiss the case on the sole ground of lack of personal jurisdiction.

In an attempt to collect on its default judgment, Xyrous instituted a garnishment proceeding against BTC and Citibank in Fairfax County Circuit Court on February 12, 2009.[3] The Virginia garnishment statute requires the judgment creditor to file a new garnishment action against the judgment debtor and garnishee that is separate from the underlying default judgment action. *See* Va Code § 8.01-511. But despite this statutory requirement of a separate filing, the garnishment action and the underlying default judgment action share common ground. Specifically, the writ of fieri facias, a critical component of the garnishment process, references the judgment action's case number (*i.e.*, CL-2007-0012388) and the judgment number (*i.e.*, 435392). Furthermore, the summons that was issued from Fairfax Circuit Court as part of the CL 2009-1938 garnishment action also listed the underlying judgment number, as well as the date of judgment of January 11, 2008.

Xyrous named Citibank as a garnishee in the garnishment action because it believes Citibank holds BTC funds in its accounts. After being served, Citibank removed the garnishment action to the United States District Court for the Eastern District of Virginia.[4] BTC did not participate in this removal. Instead, BTC has strategically limited its participation in the federal court proceedings in an attempt to preserve objections to service of process and personal jurisdiction.

---

[3] The case number for this matter was CL-2009-1938. Citibank was not a party in the previous default judgment proceeding.

[4] Removal was proper under 12 U.S.C. § 632. See Section II, *infra*.

3

BTC's first contact with this Court came on April 22, 2009, when two of its attorneys noticed appearances. Roughly a month and a half later, BTC successfully moved to continue a hearing related to a motion to compel filed by Xyrous.[5] Before this motion to compel was heard on its new hearing date, BTC filed a motion to dismiss rooted in improper service of process and lack of jurisdiction grounds. Additionally, Xyrous directed a request for admissions, a request for production of documents, and interrogatories to BTC. BTC objected generally to these requests and interrogatories, once again asserting its improper service and lack of personal jurisdiction arguments. This Court held a hearing on BTC's motion to dismiss on July 17, 2009.

## II. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to the Edge Act, which provides:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking . . . shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law.

12 U.S.C. § 632 (2006). The present garnishment action arises "out of transactions involving international or foreign banking" and therefore raises a federal question under the Edge Act. *Id.*

---

[5] Xyrous did not object to this motion.

4

## III. ANALYSIS

### A. Personal Jurisdiction

In this section, the Court will determine whether it obtained personal jurisdiction over BTC through BTC's actions in the related Virginia default judgment action. For the reasons stated below, the Court finds that (i) BTC waived its right to object to personal jurisdiction in Virginia state court, and thus consented to jurisdiction, when it made a general appearance in that state court; (ii) the jurisdiction obtained over BTC by the Virginia state court survives throughout the related garnishment proceeding; and (iii) this Court has personal jurisdiction over BTC, and this jurisdiction derives from the state court's jurisdiction over BTC in the garnishment proceeding.

*i. Waiver of Personal Jurisdiction Defense in State Action*

Personal jurisdiction refers to the court's power to exercise its authority over the parties in the lawsuit. "Under Federal Rule of Civil Procedure 4 (k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000) (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir.1997)). A court's lack of personal jurisdiction over a party is a complete defense for that party. *See* Fed. R. Civ. P. 12(b)(2); *Diamond Healthcare of Ohio, Inc.*, 229 F.3d at 450. Importantly, the personal jurisdiction defense "can be waived by appearance or failure to make a timely objection." *Guthrie v. Flanagan*, 2007 WL 4224722 at *3 (E.D. Va. 2007); *see also, e.g., Wyrough & Loser, Inc. v. Pelmor Labs., Inc.*, 376 F.2d 543, 547 (3d Cir. 1967); *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Industries Fund*, 967 F.2d 688, 691-93 (1st Cir. 1992).

Federal law and Virginia state law differ in their approaches for determining when a party waives the personal jurisdiction defense through an appearance. Virginia steadfastly adheres to the traditional general and special appearance doctrine. A party wishing to challenge personal jurisdiction in Virginia must make a special appearance where it objects only on jurisdictional grounds. *See Brown v. Burch*, 519 S.E.2d 403, 406 (Va. Ct. App. 1999). "'Any action on the part of defendant, except to object to the jurisdiction, which recognizes the case as in court, will amount to a general appearance.'" *Maryland Casualty Co. v. Clintwood Bank, Inc.*, 154 S.E. 492, 494 (Va. 1930) (citation omitted); *see also, Gilpin v. Joyce*, 515 S.E.2d 124, 125 (Va. 1999) ("[a]n appearance for any other purpose than questioning the jurisdiction of the court . . . is general and not special, although accompanied by the claim that the appearance is only special."). A defendant who makes a general appearance in Virginia "submits himself to the jurisdiction of the court." *Rosenberg v. United States Fidelity and Guar. Co. of Baltimore, Md.*, 78 S.E. 557, 558 (Va. 1913); *see also Caravelle Manufacturing Corp. v. Ultra Wash LLC, et al.*, 2006 WL 1994572 at *2 (Va. Cir. Ct. 2006) ("personal jurisdiction may be established over [a party] . . . if this Court finds that [the party] waived her objections to it.").[6]

In this case, the Court finds that BTC appeared generally, and not specially, when it made its first appearance in the Fairfax Circuit Court default judgment action. BTC's first contact with the Fairfax Circuit Court came in the form of the motion it filed to set aside the default judgment, which was captioned "Defendant's Motion for Relief from Judgment by Default." As mentioned above, BTC argued that the following Xyrous conduct amounted to fraud on the court in the accompanying memorandum in support of its motion: (1) Xyrous filed a claim in Virginia when the contract between the parties had a forum selection clause stating that disputes should be

---

[6] As explained in more detail below, federal law abolished the distinction between special and general appearances through Fed. R. Civ. P. 12.

resolved in England; (2) despite this forum selection clause, Xyrous represented that the Fairfax County Circuit Court had subject matter jurisdiction; (3) Xyrous repeatedly represented that it properly served BTC's counsel of record when no such counsel existed and no such service was effected.

Importantly, BTC never made a special appearance asking the court to dismiss the case on the sole ground of lack of personal jurisdiction. Instead, BTC's motion to set aside the default judgment was a general appearance. *See Franklin v. Com., Dept. of Social Services, Div. of Child Support Enforcement ex rel. Franklin*, 497 S.E. 2d 881, 886 (Va. Ct. App. 1998) (adopting holding from other court that pleading to vacate default judgments was general appearance that submitted defendant to jurisdiction). In making a general appearance, BTC waived its right under Virginia law to assert the personal jurisdiction defense in the default judgment action and also consented to the jurisdiction of the Fairfax Circuit Court. *See Maryland Casualty Co.*, 154 S.E. at 494; *Gilpin v. Joyce*, 515 S.E.2d at 125; *Rosenberg v. United States Fidelity and Guar. Co. of Baltimore, Md.*, 78 S.E. at 558.

*ii. Impact of Court's Jurisdiction in Default Judgment Action on Garnishment Action*

Given the Court's finding that the Fairfax Circuit Court obtained personal jurisdiction over BTC as a result of BTC's general appearance, the Court must now determine whether that personal jurisdiction survives until the garnishment action, or whether personal jurisdiction must be reestablished. The Fourth Circuit addressed this exact issue in *Smith v. Lorillard, Inc.*, 945 F.2d 745 (4th Cir. 1991).

In *Lorillard*, the debtor's wages were subjected to two garnishment orders issued by a Kentucky state court. *Id.* at 745. The underlying action from which the garnishment orders arose was brought against the debtor while he was a resident of Kentucky. *Id.* Later, after the

debtor moved to North Carolina, he filed a suit in North Carolina in an attempt to prevent his wages from being garnished in Kentucky. *Id.* The North Carolina action was removed by the defendant Lorillard to the United States District Court for the Middle District of North Carolina. *Id.*

An issue arose in this litigation regarding whether the Kentucky state court's personal jurisdiction over the debtor in the initial judgment action extended to the garnishment proceeding. The Fourth Circuit framed the issue as follows: whether a state court must "engage in a new personal jurisdiction balancing test *after the underlying judgment is entered* in order to proceed with and enforce garnishment orders[.]" *Id.* at 746 (emphasis in original). In addressing this issue, the court analyzed a leading Supreme Court jurisdiction case, *Shaffer v. Heitner*, 433 U.S. 186 (1977).

> *Shaffer* is a 1977 case in which the Supreme Court overruled in part its long-standing decision in *Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), and held that the use of *pre-judgment* garnishment against a nonresident debtor, based on the presence of the debtor's employer in the garnishor's state, was no longer, in and of itself, sufficient to confer *in rem* jurisdiction over the debtor, absent a showing that the debtor had "minimum contacts" with the garnishor's chosen forum state. 433 U.S. at 208-09, 97 S.Ct. at 2581-82.

*Lorillard, Inc.*, 945 F.2d at 746. The Fourth Circuit then distinguished the jurisdictional situation in *Lorillard* from that of *Shaffer*, explaining that "*Shaffer* sets limits only on the *original* assertion of *in rem* and quasi *in rem* jurisdiction over non-resident defendants, not on the imposition of an ancillary order of garnishment flowing from a judgment for which the court originally had *in personam* jurisdiction over the creditor of the garnishee." *Id.*

Next, the court explained that "[i]t is well-settled that garnishment is an ancillary proceeding 'growing out of, and dependent upon, another original or primary action or proceeding'" and that "the Kentucky orders of garnishment were ancillary to the prior money

8

judgments of the Kentucky court." *Id.* (internal citations omitted). As a result, the court held that "the Kentucky court's jurisdiction over [the debtor] . . . for the purpose of ordering the ancillary remedy of garnishment, continued from the original assertion of jurisdiction and did not have to be established anew at the time the judgment creditors sought their orders of garnishment." *Id.* at 746. Xyrous argues that this holding compels the conclusion in the present case that the state court's jurisdiction over BTC in the default judgment action carries over to the garnishment action and need not be renewed.

BTC attempts to distinguish *Lorillard* from the present case by arguing that *Lorillard* involved Kentucky law, which views the garnishment proceeding and the underlying judgment proceeding as a single cause of action.[7] In Virginia, BTC argues, the garnishment action is a separate cause of action from the underlying judgment action. *See* Va. Code § 8.01-511. BTC relies on this distinction in asserting that personal jurisdiction, under Virginia law, does not survive from the initial judgment action until the garnishment action.[8]

While BTC is correct that a Virginia garnishment action is a separate and distinct proceeding from the underlying judgment action, the Court rejects BTC's argument that this characteristic makes the present case distinguishable from *Lorillard*. Even though a garnishment action and its underlying judgment action are technically different legal proceedings in Virginia, these two types of actions are still closely related under Virginia law from a practical and substantive standpoint. In this case, for example, the writ of fieri facias, a critical component of the garnishment process, references the judgment action's case number and judgment number.

---

[7] Kentucky law states that "[a]ny person in whose favor a final judgment *in personam* has been entered in any court of record of this state may . . . in the same cause in which said judgment was obtained . . . obtain an order of garnishment to be served in accordance with the Rules of Civil Procedure." Ky. Rev. Stat. Ann. § 425.501(1).

[8] The Court found no Virginia case law addressing this issue.

And the summons that was issued from the Fairfax Circuit Court as part of the garnishment action also listed the underlying judgment number, as well as the date of judgment.

Furthermore, the Court finds that Kansas garnishment law is instructive in this case. As the Virginia Supreme Court acknowledged in *Butler v. Butler*, "Kansas has a statutory equivalent of the Virginia rule that garnishment is an independent suit in which the garnishee is a party defendant." 247 S.E. 2d 353, 355 (Va. 1978).[9] The Kansas Supreme Court has discussed the functional meaning of its garnishment statute's characterization of the initial judgment action and the garnishment action as separate proceedings. Specifically, the Kansas Supreme Court has written:

> Appellee's position is based squarely upon the prosition [sic] that garnishment is nothing more or less than a form of attachment.... Conceding, as appellant points out, this particular question is here for the first time since 1889, when by the enactment of Laws of 1889 ... garnishment became a separate and distinct provisional remedy, and that there are some authorities in foreign jurisdictions to the contrary, we are inclined to the view that appellee's position must be upheld.
>
> Long after the garnishment statute referred to came into force and effect in *Linn County Bank v. Davis*, 109 Kan. 758, 202 P. 97, while disposing of a claim that garnishment differed from attachment, we held: "Garnishment is merely another form of attachment-a species of seizure, by notice, of property and funds in the hands of a third person. (citing cases)."
>
> That this court did not believe the essential characteristics of garnishment proceedings were changed by the 1889 enactment is fully demonstrated by the fact that in the case just cited, both in the opinion and in the syllabus, it referred to and relied on Beamer v. Winter, 41 Kan. 596, 21 P. 1078, dealing with the law then in force and effect, which holds: "Garnishment is attachment in the hands of a third person, and thereby is a species of seizure by notice."

*First Nat. Bank in Wichita v. Bryant*, 213 P.2d 1002, 1004 (Kan. 1950). Importantly, the Kansas Supreme Court explained that while its garnishment statute required the garnishment

---

[9] This Kansas statute was enacted in 1889.

proceedings are independent and distinct actions, "the essential characteristics of garnishment proceedings" were not changed. *Id.*

Finding this reasoning persuasive, and applying it to the present case, the Court concludes that while the Virginia garnishment statute (Va. Code § 8.01-511) changed the procedural framework of garnishment actions, the statute did not alter the substantive and practical relationship between the garnishment action and the underlying judgment action. This conclusion minimizes the substantive difference between Kentucky's garnishment law, which treats the garnishment action and underlying judgment action as one proceeding, and Virginia's garnishment law, which treats these two proceedings as separate actions. The Court finds that the remaining procedural difference between the two states' garnishment statutes is not substantial enough to cause the Court to depart from the Fourth Circuit's *Lorillard* precedent. *See Lorillard, Inc.*, 945 F.2d at 746. As a result, the Court holds the personal jurisdiction obtained by the Virginia court over BTC in the default judgment action survived to the garnishment proceeding, which means that Xyrous was not required to reestablish personal jurisdiction over BTC in the garnishment proceeding. *See id.* at 746.

*iii. The Relationship Between the Removal of the Garnishment Action and Personal Jurisdiction*

As mentioned above, the garnishment action at issue in this case was removed from the Fairfax Circuit Court to this Court. The question becomes, then, whether the personal jurisdiction of the Fairfax Circuit Court over BTC in the garnishment action provides this Court with jurisdiction. The answer is clearly "yes."

In removal cases, a federal court obtains personal jurisdiction over a party if the state court from which that case was removed had personal jurisdiction over that party. *See Aanestad v. Beech Aircraft Corp.*, 521 F.2d 1298, 1300 (9th Cir. 1974) ("Since the case was removed from

11

a California court, the district court had personal jurisdiction over the defendant Beech only if the court from which the case was removed had such jurisdiction."); *Bach v. McDonnell Douglas, Inc.*, 468 F. Supp. 521, 524 (D.C. Ariz. 1979) ("Since this case was removed from an Arizona Court, this Court has personal jurisdiction only if the Arizona Court from which it was removed, could properly assert jurisdiction."); *Diamond Healthcare of Ohio, Inc.*, 229 F.3d at 450 (citing *ESAB Group, Inc.*, 126 F.3d at 622) ("a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law.")). Here, the Fairfax Circuit Court's personal jurisdiction over BTC in the garnishment proceeding provides this Court with personal jurisdiction over BTC in the present action.

In sum, the Court finds that (i) BTC waived its right to object to personal jurisdiction in Virginia state court, and thus consented to jurisdiction, when it made a general appearance in that state court; (ii) the jurisdiction obtained over BTC by the Virginia state court survives throughout the related garnishment proceeding; and (iii) this Court has personal jurisdiction over BTC, and this jurisdiction derives from the state court's jurisdiction over BTC in the garnishment proceeding. Because this court has personal jurisdiction over BTC, BTC's Motion to Dismiss for Lack of Personal Jurisdiction shall be denied.

## B. Service of Process

### i. Whether BTC Waived its Objection to Improper Service of Process

BTC argues that it was not properly served with process by Xyrous in this garnishment action. Xyrous argues in response that BTC waived any improper service of process defense

through its actions in state and federal court. For the reasons stated below, the Court finds that BTC did not waive its improper service of process defense though its actions in either forum.[10]

The Court shall first address BTC's actions in state court. To be clear, the service of process in the default judgment action is not the focus of this analysis. Instead, the service of process at issue is that associated with the garnishment proceeding. As mentioned above, the Virginia garnishment statute, Va. Code § 8.01-511, treats the underlying judgment proceeding and the garnishment proceeding as two separate actions, with each requiring its own service of process. This means that even though the judgment debtor was served with process in the judgment action, process must be served again on the debtor in the garnishment proceeding.[11]

The statutory requirement of two separate services of process means that the defense of improper service of process cannot be waived in a garnishment proceeding based on a party's actions in the underlying judgment proceeding.[12] Instead, an act, or general appearance, that triggers waiver of the improper service of process defense in a Virginia garnishment proceeding must relate specifically to the garnishment proceeding itself. Here, while BTC made a general appearance in the default judgment action (see Section III.A.i, *infra*), it never made an appearance, special or general, in the state garnishment action prior to removal. Therefore, the

---

[10] The Fourth Circuit has held that a party's actions in state court, before removal, can lead to waiver of a defense in federal court after removal. Furthermore, the Fourth Circuit has explained that state waiver law applies to this issue of whether actions in state court can trigger waiver in federal court. See *Mobil Oil Co. de Venezuela v. Jimenez*, 1991 WL 237794 at *2 (4th Cir. 1991) (unpublished) ("Whether [the defendant], by his action prior to removal, waived objection to personal jurisdiction is to be resolved by Virginia law, since in a removal case, State rules and procedures control the procedure for the filing of the action until removal to the federal court has been effected. The federal court, upon removal, simply 'takes the case up where the State court left it.' . . . . Thus, during this period between filing of the action in state court and its removal to the federal court, a defendant may lose his right to challenge personal jurisdiction if he has taken any action which under state law will qualify as a waiver of such rights on his part. We accordingly look to Virginia law in order to ascertain whether [the defendant] waived the right to contest jurisdiction by his actions in the state court.") (citations omitted).

[11] The garnishee must also be served and party to the garnishment proceeding. See Va. Code § 8.01-511.

[12] Similar to the personal jurisdiction waiver issues analyzed above, a party can waive its right to object to improper service of process in Virginia state court if it makes a general appearance and fails to file a motion to quash process. See Va. Code § 8.01-277; *Brown v. Burch*, 519 S.E. 2d at 406.

Court concludes that BTC did not waive its improper service of process defense through its actions in state court.[13]

Regarding waiver of the service of process defense in federal court, federal waiver laws apply to actions occurring after removal. *See Moore's Federal Practice 3d* § 81.04[2]-[3] (While state rules govern an action prior to removal to federal court, "[o]nce the action has been removed, the Federal Rules govern the procedures to be followed in the district court, just as if the case had been originally commenced in the federal court."). As mentioned above, the federal waiver rules differ slightly from the Virginia state waiver rules in that the federal rules no longer recognize the special and general appearance distinction. *See* Fed. R. Civ. P. 12.

Federal Rule of Civil Procedure 12(h)(1) governs the waiver of service of process issue. Under this rule, a party's right to object to insufficient service of process is waived if that party fails to assert this defense in its first Rule 12 motion, or other responsive pleading. Fed. R. Civ. P. 12(h)(1). As the Sixth Circuit has explained, "Fed R. Civ. P. 12(h)(1) advises a litigant to exercise great diligence in challenging personal jurisdiction, venue, or service of process. If he wishes to raise any of these defenses he must do so at the time he makes his first significant defensive move." *Ladder Man v. Manufactures Distribution Servs.*, 234 F.3d 1268, *2 (6th Cir. 2000) (unpublished); *see, e.g., Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir.2002) (waiver

---

[13] It may appear, on its face, that the Court has rendered inconsistent rulings on the personal jurisdiction and service of process issues by permitting jurisdiction to survive from the underlying judgment action to the garnishment proceeding, but not service of process or waiver of service of process. The Court believes, however, that the relevant statutes and case law on these issues compel the conclusions reached above. First, while the Virginia garnishment statute explicitly requires an additional service of process for the garnishment action, the statute is silent as to the issue of whether personal jurisdiction must be reasserted. Furthermore, the Kentucky garnishment statute at issue in *Lorillard*, like the Virginia statute, requires a separate, post-judgment service of process on the judgment debtor and garnishee in addition to the initial service in the underlying judgment matter. *See* Ky. Rev. Stat. Ann. § 425.501(2) ("The order of garnishment shall be served on the persons named as garnishees, and in addition a copy thereof shall be delivered by the garnishee to the judgment debtor or mailed to him at his last known address . . . ."). Despite this statutory requirement of additional service of process, the *Lorillard* court still held that personal jurisdiction need not be renewed as to the judgment debtor in the garnishment proceeding if jurisdiction existed in the underlying judgment action. *Lorillard, Inc.*, 945 F.2d at 746.

of personal jurisdiction defense clearly made where defendant makes appearance before court to deny allegations of complaint without making personal jurisdiction objection).

Importantly, a party can waive a Rule 12 defense before an answer or Rule 12 motion is ever filed. *Trustees of Cent. Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732 -733 (7th Cir. 1991) (citing *Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278, 281 (5th Cir.1987)). For example, waiver of the insufficient service of process defense can occur "[w]here a defendant leads a plaintiff to believe that service is adequate and that no such defense will be interposed." *Trustees of Cent. Laborers' Welfare Fund*, 924 F.2d at 732 - 733 (citing *Broadcast Music, Inc.*, 811 F.2d at 281). The filing of a motion before the answer or a Rule 12 motion, however, does not necessarily constitute a waiver of a Rule 12 defense. *Ciolli v. Iravani*, 625 F. Supp. 2d 276, 290 (E.D. Pa. 2009) (citing *Tracinda Corp. v. Daimlerchrysler AG*, 197 F. Supp. 2d 86, 91 (D. Del. 2002)). For a motion filed prior to an answer or a Rule 12 motion to constitute waiver, that motion must seek "affirmative relief from the court." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999). Affirmative relief is implicated when the court "considers the merits or quasimerits of a controversy." *Wyrough & Loser, Inc. v. Pelmor Labs., Inc.*, 376 F.2d 543, 547 (3d Cir. 1967).

These rules direct the Court to discern the substance and significance of BTC's defense moves in federal court after removal. Here, BTC's federal court defense moves consist of the following: BTC's counsel entering appearances; BTC's counsel moving, with the consent of Xyrous, to continue a hearing related to a motion to compel filed by Xyrous; and BTC's counsel filing a motion to dismiss rooted in improper service of process and lack of jurisdiction grounds before the motion to compel was heard. BTC also responded to Xyrous's discovery requests, but

did so by objecting generally and asserting its improper service and lack of personal jurisdiction arguments.

The Court finds that none of these defense moves triggers waiver. First, the Court believes that the act of BTC's counsel entering a notice of appearance, where the counsel merely announced to the court that they represented BTC, is not the type of act that should constitute waiver of the 12(h)(2) insufficient service of process defense. Indeed, this appearance was filed before BTC's Rule 12 motion to dismiss and prior to any answer, in no way constitutes a defensive move, and seeks no affirmative relief from the Court. *See Ladder Man*, 234 F.3d at *2; *Bel-Ray Co.*, 181 F.3d at 443.

The Court also finds that BTC did not waive its insufficient service of process defense by moving to continue the hearing on the motion to compel filed by Xyrous. Like the notice of appearance, BTC's motion was filed before it submitted an answer and before it filed its Rule 12 motion to dismiss. Furthermore, this motion to continue sought no affirmative relief from the Court involving the quasimerits or merits of the controversy. *See Bel-Ray Co.*, 181 F.3d at 443. Instead, BTC's motion to continue was a procedural move where BTC, with the consent of Xyrous, merely sought the Court's permission to delay a hearing date, which provided BTC with time to make its Rule 12 objections on personal jurisdiction and insufficient service of process grounds.

Other courts have found that procedure-based motions similar to the motion to continue filed by BTC do not constitute waiver of Rule 12 defenses. *See e.g., Ciolli v. Iravani*, 2009 WL 904672 at *10 (E.D. Pa. 2009) (motion to stay did not seek affirmative relief from the court and therefore could not serve as a basis for waiver of Rule 12 defense); *Unites States v. 51 Pieces of Real Property*, 17 F.3d 1306, 1314 (10th Cir. 1994) (motion for extension of time to file a claim

is not a defense move that triggers waiver). Even more, this Court has found that a motion filed on statute of limitations grounds, which can be a dispositive issue, did not elicit waiver of a Rule 12 personal jurisdiction defense. *See Guthrie v. Flanagan*, 2007 WL 4224722 at *3 (E.D. Va. 2007). In view of this case law, and because BTC's motion to continue did not implicate the merits of the case in any manner, this Court finds that BTC has not made a defense move and has not waived Rule 12 improper service of process defense by filing this motion.

The only other noteworthy act that BTC engaged in before filing its Rule 12 motion to dismiss was its response to Xyrous's discovery requests. But as mentioned above, this response consisted of a general objection to personal jurisdiction and service of process, not a specific reply to the substance of the discovery requests. For the reasons stated above, the Court concludes that BTC did not waive its improper service of process defense through its actions in federal court after removal.

*ii. Xyrous did not serve BTC in accordance with the Hague Convention*

BTC argues that Xyrous's service of process must comply with the standards set forth in the Hague Convention and that Xyrous failed to comply with these standards. Federal Rules of Civil Procedure 4(f)(1) and 4(h)(2) require plaintiffs to effect service in accordance with international agreements if applicable. The Hague Convention is one such applicable agreement. "The Hague Convention expressly applies 'in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.'" *Fleming v. Yamaha Motor Corp., USA*, 774 F. Supp. 992, 224 (W.D. Va. 1991) (quoting Hague Convention, November 15, 1965, Article 1, 20 U.S.T. 361, 658 U.N.T.S. 163). Because the Hague Convention has the status of a self-executing treaty, the Articles from the Convention supersede state law where there is a conflict. *See Weight v. Kawasaki & Krecke*, 697 F.2d 574, 575-76 (4th

17

Cir. 1983); *See also Volkswagenwerk Aktiengesellshaft v. Schlunk*, 486 U.S. 694, 699 (1988) ("by virtue of the Supremacy Clause, U.S. Const., Art. VI, the [Hague] Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies.").

Under the Hague Convention, service by mail on a party in a foreign country is appropriate only if the country of destination does not object to Article 10. Hague Convention, November 15, 1965, Article 10, 20 U.S.T. 361, 658 U.N.T.S. 163 (hereinafter "Hague Convention"). If the country of destination objects to Article 10, the Hague Convention requires a plaintiff to serve the complaint and accompanying documents on a designated "central authority" in the defendant's country and translate the complaint and accompanying documents into the defendant's language. Hague Convention, Articles 3-6.

Here, BTC's home country, Bulgaria, objected to Article 10. Therefore, for Xyrous to serve BTC in accordance with the Hague Convention, this service must be made on the central authority designated by Bulgaria, which is the Ministry of Justice and its district courts. *See* Defendant's Exhibit 1 (Dkt. no. 23-2). Xyrous, however, failed to serve the Bulgarian Central Authority and instead served BTC with the complaint and related documents through mail at BTC's last known address. Because Xyrous did not serve BTC via the Bulgarian Central Authority, the Court finds that Xyrous failed to meet its service of process obligations under the Hague Convention.

Xyrous argues that Article 15 of the Hague Convention is a savings clause that rescues Xyrous even if it failed to serve BTC properly. *See* Hague Convention, Article 15. However, as the Seventh Circuit has explained, Article 15 only applies to defendants who have not appeared in the action. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 600 n.4 (7th Cir. 2007). "Article 15 by its terms, does not apply to a party who has appeared." *Id.* Here, BTC has

appeared in the present action. Therefore, the Court finds that Article 15 cannot rescue Xyrous's ineffective service of process.[14]

While Xyrous failed to comply with the Hague Convention, the Court finds it premature to dismiss Xyrous's complaint on insufficient service of process grounds at this time. This is because under Fed. R. Civ. P. 4(m), Xyrous had 120 days from the date of removal to serve BTC. *See Randolph v. Hendry*, 50 F.Supp.2d 572, 579-580 (S.D. W.Va. 1999) (explaining that while Rule 4(m) mandates service on a defendant within 120 days after the *complaint* is filed, in a removal case, this 120-day period is not triggered until the *notice of removal* is filed.); *Eccles v. Nat'l Semiconductor Corp.*, 10 F. Supp. 2d 514, 519 (D. Md. 1998) ("Rule 4(m)'s 120-day period for service begins to run on the date of removal"). Citibank filed its notice of removal on April 10, 2009. Therefore, Xyrous had 120 days from that date, or until August 10, 2009, to effect proper service of process on the defendants.[15]

This Court held its hearing on the service of process and personal jurisdiction issues (*i.e.*, the hearing related to this Memorandum Opinion) on July 17, 2009, twenty-four days before the 120-day period expired. At the end of the hearing, the Court informed the parties that it was taking the matter under advisement. Had Xyrous been informed that its attempt at service of process on BTC was inadequate at the July 17, 2009 hearing, it would likely have been able to re-serve BTC in accordance with Hague Convention procedures before the 120-day period expired on August 10, 2009 or obtain an extension for good cause. Xyrous, however, with the

---

[14] The parties dispute whether Virginia state law or federal law applies to the service of the garnishment summons in this case. The laws of both forums require service in accordance with the Hague Convention in this particular instance, however. *See* Fed R. Civ. P. 4(f)(1) (federal law requiring service of process to comport with international agreements); *International Space Brokers, Inc. v. Redier*, 2000 WL 1052808 at *10 (Va. Cir. Ct. 2000) (state court ruling holding that Hague Convention applies to service of process under Virginia law because Virginia long-arm statute requires service of documents abroad).

[15] August 8, 2009 is the date that falls 120 days from April 10, 2009. But because this day is a Saturday, the 120 day service of process period ends on the next business day, which is August 10, 2009. *See* Fed. R. Civ. P. 6.

Court's approval, elected to wait until the Court issued its ruling on the service of process issue before attempting re-service, if re-service was required.

Considering these circumstances, the Court finds that good cause exists for granting Xyrous a time extension to effectuate service of process on BTC in accordance with the Hague Convention. *See* Fed. R. Civ. P. 4(m). Furthermore, the Court finds that an extension of 120 days is appropriate, given that service of a Bulgarian corporation under the Hague Convention is a complex process involving a translation, and because Xyrous's failure to serve BTC under the Hague Convention earlier in this garnishment action was the product of a reasonable belief that the service that it did effectuate complied with the Virginia and Federal Rules of Civil Procedure.[16] In sum, Xyrous shall have 120 days to serve BTC in a manner consistent with this opinion.

## IV. CONCLUSION

For the foregoing reasons, BTC's motion to dismiss shall be denied. Specifically, its motion to dismiss on lack of personal jurisdiction grounds shall be denied with prejudice, and its motion to dismiss on insufficient service of process grounds shall be denied without prejudice. Xyrous shall have 120 days to serve BTC in accordance with the Hague Convention.

ENTERED this 4th day of September, 2009

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

---

[16] Contributing to the reasonableness of Xyrous's belief that its initial service on BTC in this garnishment proceeding was adequate is the fact that Xyrous obtained a default judgment against BTC in Virginia state court without service under the Hague Convention.